The PEOPLE of the State of Colorado, Petitioner–Appellee,

In the Interest of J.M.N., Juvenile–Appellant.

No. 00CA2317.

Colorado Court of Appeals, Div. IV.

Dec. 6, 2001.

Ken Salazar, Attorney General, Esteban A. Martinez, Assistant Attorney General, Denver, CO, for Petitioner–Appellee.

Powers & Associates LLC, Willam A. Powers, Jean M. Powers, Littleton, CO, for Juvenile–Appellant.

Opinion by Judge DAVIDSON.

J.M.N., a juvenile, appeals from a judgment adjudicating him delinquent based on a finding that he committed acts that, if com-

mitted by an adult, would constitute the crime of cruelty to an animal. We affirm.

The evidence at trial established that J.M.N., along with two other juveniles, used a liquid depilatory to emblazon a swastika upon a horse.

## I.

Because his trial commenced more than sixty days after the entry of his not guilty plea, J.M.N. argues that the trial court violated his statutory right to a speedy trial. We disagree.

J.M.N. entered a plea on August 9, 2000. The following week, at a hearing on the prosecutor's motion to join this adjudicatory trial with those of the other two juveniles, J.M.N. informed the court that he would not waive his statutory right to have his trial commence within sixty days of the date that he entered his plea. The prosecutor told the court, erroneously, that the sixty-day speedy trial period would not expire until October 22, and J.M.N. did not correct the prosecutor's misstatement. The trial court scheduled the trial for October 18, which was ten days after the sixty-day speedy trial period. When J.M.N. appeared for trial on October 18, he did not move for dismissal of the delinquency petition based on the violation of his speedy trial rights.

Section 19–2–108(2), C.R.S.2001, of the Children's Code, specifies that the parties shall comply with the deadlines set forth in § 19–2–708(1), C.R.S.2001, which in turn provides, *inter alia*, that a juvenile has a right to have an adjudicatory trial within sixty days following entry of a plea of not guilty. Moreover, § 19–2–108(3), C.R.S.2001, provides that a "continuance with regard to any of the deadlines" may be granted by the trial court "upon making a finding of good cause." However, § 19–2–108(1), C.R.S.2001, further states that "[t]he juvenile's right to a speedy trial shall be governed by section 18–1–405." That latter section sets forth statutory speedy trial provisions general applicable to adult criminal proceedings. *See* § 18–1–405, C.R.S.2001.

Defendant contends that, because there was no "good cause" finding to extend the speedy trial deadline here, noncompliance with the sixty-day rule of § 19–2–708(1) required automatic dismissal of his delinquency petition. The People argue, however, that § 19–2–108(1) incorporates the speedy trial tolling and enforcement provisions of § 18–1–405, and that, under those provisions, defendant waived his right to a speedy trial. We agree with the People.

■■■ Our primary task in construing a statute is to ascertain and give effect to the intent of the General Assembly. Each provision of a statute must be construed in harmony with the overall statutory scheme to accomplish the purpose for which the statute was enacted. Statutes must be read and considered as a whole. *People in Interest of J.L.R.*, 895 P.2d 1151 (Colo.App.1995).

■■ By its plain language, § 19–2–108 requires, in addition to specific deadlines set forth therein, that a juvenile's speedy trial rights be "governed by" § 18–1–405. Thus, to give effect to all relevant statutory provisions, as we must, we read § 19–2–108 to incorporate the tolling and enforcement provisions of § 18–1–405, at least to the extent that these provisions are not inconsistent with the more specific sixty-day and "good cause" continuance provisions of § 19–2–108. *Cf. People in the Interest of G.W.R.*, 943 P.2d 466 (Colo.App.1997)(juvenile's waiver of speedy trial governed by § 18–1–405, under former speedy trial provisions of Children's Code).

> Section 18–1–405(5), C.R.S.2001, provides:
> To be entitled to a dismissal under ... this section, the defendant must move for dismissal prior to the commencement of his trial and prior to any pretrial motions which are set for hearing immediately before the trial or prior to the entry of a plea of guilty to the charge or an included offense. Failure to so move is a waiver of the defendant's rights under this section.

This provision is not inconsistent with either the sixty-day deadline or the requirement that such deadline may be extended upon a finding of good cause.

■■ Accordingly, because J.M.N. failed to move for dismissal before the adjudicatory

trial began, as required by § 18–1–405(5), he waived his speedy trial rights under the sixty-day rule of § 19–2–708(1). *See People v. Marquez*, 739 P.2d 917 (Colo.App.1987)(defendant waived his speedy trial rights because he failed to demand dismissal prior to trial).

## II.

J.M.N. next argues that the trial court erred in its rulings on several discovery violations. Again, we do not agree.

■ Discovery in juvenile delinquency proceedings is governed by Crim. P. 16. *See* C.R.J.P. 3.3.

Crim. P. 16(III)(g) states:

If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection of materials not previously disclosed, grant a continuance, prohibit the party from introducing in evidence the material not disclosed or enter such other order as it deems just under the circumstances.

This rule gives the trial court broad discretion in determining the appropriate remedy, if any, for a discovery violation. *People v. Loggins*, 981 P.2d 630 (Colo.App.1998).

### A.

■ On the morning of trial, J.M.N. made a motion to preclude the testimony of the prosecutor's expert witness, the veterinarian who examined the horse, on the grounds that the prosecutor had failed to disclose timely a written report prepared by the veterinarian.

The trial court found that the failure to provide the report was not caused by bad faith. As a remedy, the court ruled that the veterinarian could not testify until after J.M.N. had had an opportunity to review the report. In addition, the court indicated that it would permit J.M.N. to endorse his own expert witness if, after reviewing the report, he wished to do so.

We have reviewed the record and conclude that it supports the trial court's finding that the prosecutor did not deliberately withhold the veterinarian's report. We further conclude that the trial court acted within its discretion in crafting a remedy that afforded J.M.N. an adequate opportunity to prepare his cross-examination of the veterinarian and investigate the possible existence of favorable evidence.

### B.

■ J.M.N. also objected to the admission of a videotape, which showed J.M.N. and the other juveniles "partying" at the property where the horse was stabled, because the prosecutor had failed to provide him with a duplicate copy of the videotape during discovery.

However, the record establishes that J.M.N.'s counsel was aware, no later than the first day of trial, that the videotape was available at the prosecutor's office. Thus, because J.M.N.'s counsel made no effort to view the videotape during the subsequent two-week trial recess, the trial court acted within its discretion in ruling that no discovery sanction was warranted.

### C.

■ We also perceive no error in the trial court's refusal to strike the testimony of the owner of the horse on grounds that the prosecutor had failed to preserve and provide a copy of the witness' first written statement to the police. J.M.N. did not establish that the witness' written statement had exculpatory value that was apparent when it was destroyed. *See People v. Apodaca*, 998 P.2d 25 (Colo.App.1999)(to establish a due process violation for failure to preserve potentially exculpatory evidence, the defendant must establish that the evidence possessed an exculpatory value that was apparent before it was destroyed).

### D.

■ Similarly, we find no error in the trial court's ruling allowing a juvenile accomplice to testify that the substance applied to the horse was "Nair," a liquid depilatory.

J.M.N. had argued that the police had taken a small sample of an unknown substance from the affected area of the horse's back and then had destroyed that substance without submitting it for laboratory testing. However, the record supports the trial court's determination that J.M.N. failed to show the destroyed substance had any exculpatory value. *See Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988)(the failure to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant, does not violate due process unless the defendant can show bad faith on the part of the police).

### III.

■ Finally, J.M.N. contends the trial court erred by denying his motion for judgment of acquittal. We disagree.

The allegations of a delinquency petition must be proven beyond a reasonable doubt. Section 19–2–804(1), C.R.S.2001.

As relevant here, "[a] person commits cruelty to animals if he knowingly or with criminal negligence . . . tortures [or] torments . . . any animal." Section 18–9–202(1)(a), C.R.S. 2001.

■ The standards for reviewing the sufficiency of evidence supporting a judgment of juvenile delinquency are the same as those for reviewing the sufficiency of evidence supporting a judgment of conviction in a criminal case. *See People in Interest of A.P.E.*, 988 P.2d 172 (Colo.App.1999), *rev'd on other grounds*, 20 P.3d 1179 (Colo.2001). The reviewing court must determine whether the evidence, viewed as a whole and in the light most favorable to the prosecution, is sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crimes charged beyond a reasonable doubt. *Kogan v. People*, 756 P.2d 945 (Colo. 1988).

Here, J.M.N. argues that the evidence was insufficient because the prosecution did not prove, in its case-in-chief, that the delinquent act occurred in Colorado, that the delinquent act was committed on the date alleged in the petition, or that the injury to the horse was sufficient to support a finding of "torture."

J.M.N. also argues that the accomplices' testimony was not corroborated.

However, the prosecution called a witness in its case-in-chief who testified that the horse was boarded in Adams County, Colorado. Thus, the proof of location was sufficient, and the evidence subsequently adduced when the prosecution was allowed to reopen its case was merely cumulative. There also was ample evidence establishing that the delinquent act occurred on the date alleged in the petition.

Moreover, the testimony of the veterinarian that the afflicted areas on the horse were swollen and that the horse responded in a manner that indicated that the animal was in pain was sufficient to support a finding of "torture" under the cruelty to animals statute.

■ Furthermore, contrary to J.M.N.'s contention, a trier of fact may convict a defendant upon the uncorroborated testimony of an accomplice. *See People v. Martinez*, 187 Colo. 413, 531 P.2d 964 (1975). In any event, here, the testimony of each accomplice was in fact corroborated by the testimony of the other, as well as by the horse's owner, who testified that J.M.N. was present at the scene on the day in question.

The judgment is affirmed.

Judge RULAND and Judge DAILEY concur.