## The PEOPLE of the State of Colorado, Petitioner–Appellee,

In the Interest of P.C., Juvenile– Appellant.

No. 02CA2133.

Colorado Court of Appeals, Div. I.

Oct. 23, 2003.

Ken Salazar, Attorney General, Jess A. Redman, Assistant Attorney General, Denver, Colorado, for Petitioner–Appellee.

Mark S. Davis, Lamar, Colorado, for Juvenile–Appellant.

Opinion by Judge NEY.

P.C., a juvenile, appeals the judgment of delinquency entered upon a jury verdict finding that he committed acts which would constitute the offense of second degree assault if committed by an adult. P.C. also appeals the sentence imposed upon the delinquency adjudication. We affirm.

I.

■ P.C. first argues that the evidence is insufficient to support the jury's verdict and that the trial court erred in denying his motion for judgment of acquittal. We disagree.

The allegations of a delinquency petition must be proved beyond a reasonable doubt.

Section 19–2–804(1), C.R.S.2002. As relevant here, a person commits second degree assault if, with the intent to cause bodily injury to another person, he or she causes such injury to any person by means of a deadly weapon. Section 18–3–203(1)(b), C.R.S.2002.

■ The standards for reviewing the sufficiency of evidence supporting a judgment of juvenile delinquency are the same as those applied in a criminal case. The reviewing court must determine whether the evidence, viewed as a whole and in the light most favorable to the prosecution, is sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crime charged beyond a reasonable doubt. *People in Interest of J.M.N.*, 39 P.3d 1261, 1265 (Colo.App.2001).

The assault in this case occurred during a melee involving multiple participants. One witness testified that he saw P.C. running toward the victim with a broken beer bottle in his hand. The witness next saw P.C. make a "swinging" motion and then saw P.C. standing over the victim with the broken beer bottle just as the victim's arm began to bleed. Undisputed evidence established that the victim sustained a deep cut to his forearm.

Based on our review of the entire record, we are satisfied that this evidence is sufficient to support the jury's verdict. While we acknowledge that there were significant conflicts in the evidence, we cannot say that the primary eyewitness was incredible as a matter of law. *See People v. Ramirez*, 30 P.3d 807, 809 (Colo.App.2001)(testimony is incredible as a matter of law if it conflicts with nature or fully established or conceded facts, such as testimony as to facts which the witness physically could not have observed or events that could not have happened under the laws of nature; testimony that is merely biased, inconsistent, or conflicting is not incredible as a matter of law).

## II.

■ P.C. next argues that his sentence must be vacated because the trial court misunderstood the available sentencing options. Again, we disagree.

Section 19–2–908(1)(c)(I)(A), C.R.S.2002, provides, in relevant part, that "[u]pon adjudication as a violent juvenile offender, as described in section 19–2–516(3), the juvenile shall be placed or committed out of the home for not less than one year."

Although P.C. admits that he was adjudicated a violent juvenile offender, he contends the trial court erred by refusing to interpret the phrase "placed or committed out of the home" so as to include placement in the home of the natural parent with whom P.C. had not previously been living. We are not persuaded.

P.C. relies, in part, on § 19–2–912, C.R.S. 2002, which provides, subject to an exception not applicable here, that "the court may place the juvenile in the legal custody of a relative or other suitable person under such conditions as the court may impose, which may include placing the juvenile on probation, as provided in section 19–2–913, or under protective supervision." *See also* § 19–2–907(1)(d), C.R.S.2002 (authorizing a sentencing court to enter a decree of placement of legal custody of the juvenile with a relative or other suitable person, as provided in § 19–2–912).

■ Our primary task in construing a statute is to ascertain and give effect to the intent of the General Assembly. To discern legislative intent, a court should look first to the statutory language. Statutory words and phrases should be given effect according to their plain and ordinary meaning. And the statute must be read and considered as a whole. *People in Interest of M.M.O.P.*, 873 P.2d 24, 26 (Colo.App.1993). When it appears that statutes pertaining to the same subject matter may conflict, we are obligated to avoid inconsistency if possible and construe the statutes in harmony to give effect to each and thereby ensure that legislative intent is fulfilled. *People v. Lowe*, 967 P.2d 177, 180 (Colo.App.1998).

Here, the custodial placement sentencing option of § 19–2–907(1)(d) referencing § 19–2–912 is not available for violent juvenile offenders such as P.C. because the plain language of § 19–2–907(2) specifically states that "[t]he judge shall sentence any juvenile adjudicated as a special offender as provided

in section 19–2–908." Thus, the availability of a custodial placement sentence for a violent juvenile offender depends entirely on whether such a sentence is authorized by § 19–2–908(1)(c)(I)(A).

By its terms, § 19–2–908(1)(c)(I)(A) requires that the juvenile be "placed or committed out of the home for not less than one year."

"Placement out of the home" means placement for twenty-four-hour residential care in any facility or center operated or licensed by the department of human services, but the term does not include any placement that is paid for totally by private moneys or any placement in a home for the purposes of adoption in accordance with section 19–5–205. "Placement out of the home" may be voluntary or court-ordered. "Placement out of the home" includes independent living.

Section 19–1–103(85), C.R.S.2002.

"Independent living" means a form of placement out of the home arranged and supervised by the county department of social services wherein the child is established in a living situation designed to promote and lead to the child's emancipation. Independent living shall only follow some other form of placement out of the home.

Section 19–1–103(65), C.R.S.2002.

Section 19–1–103(85) provides that a "placement out of the home" must either be in a "facility or center operated or licensed by the department of human services" or in an "independent living" situation. Clearly, a natural parent does not constitute a "facility or center operated or licensed by the department of human services." Therefore, the only remaining question is whether such an arrangement might qualify as "independent living" within the meaning of § 19–1–103(65).

Although the definition of "independent living" in § 19–1–103(65) could be interpreted as encompassing placement with a natural parent with whom the juvenile has not recently lived, that section also specifically provides that such a placement shall be "arranged and supervised by the county department of social services wherein the child is established." In this case, that supervision would not be possible because the parent with whom P.C. sought to be placed does not

live in Colorado. Moreover, such a placement would not be available as an initial sentencing option because the section further specifies that "[i]ndependent living shall only follow some other form of placement out of the home." Accordingly, under these circumstances, we conclude the trial court did not err in determining that it was obligated to place P.C. in a "facility or center operated or licensed by the department of human services."

Nor could the court have "committed" P.C. to the custody of his mother under § 19–2–907(2). Although, as argued by P.C., the term "commit" means "to transfer legal custody," § 19–1–103(24), C.R.S.2002, the term cannot be read in isolation. When read in the context of the statutory scheme as a whole, it becomes apparent that the commitment is limited to institutions and programs to which a juvenile may be "committed" under the Children's Code, namely, the department of human services, and to community accountability programs. *See* § 19–2–907(1)(a), (f), C.R.S.2002.

The judgment and sentence are affirmed.

Judge DAILEY and Judge LOEB concur.