The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
January 10, 2019

## 2019COA4

## No. 17CA1678, *People in Interest of G.S.S.* — Children's Code — Juvenile Court — Delinquency — Bail — Speedy Trial

In this juvenile delinquency case, a division of the court of appeals concludes that under section 19-2-509(4)(b), C.R.S. 2018, a court is required to bring a juvenile to trial within sixty days of a no-bond order. If the court fails to do so, it violates the juvenile's speedy trial rights. The division further concludes that the remedy for this type of speedy trial violation is dismissal of the charges.

COLORADO COURT OF APPEALS 2019COA4

Court of Appeals No. 17CA1678
La Plata County District Court No. 17JD15
Honorable Todd P. Norvell, Judge

The People of the State of Colorado,

Petitioner-Appellant,

In the Interest of G.S.S.,

Juvenile-Appellee.

ORDER AFFIRMED

Division VII
Opinion by JUDGE ASHBY
Harris, J., concurs
J. Jones, J., dissents

Announced January 10, 2019

Philip J. Weiser, Attorney General, Joseph G. Michaels, Senior Assistant
Attorney General, Denver, Colorado, for Petitioner-Appellant

Megan A. Ring, Colorado State Public Defender, Ryann S. Hardman, Deputy
State Public Defender, Denver, Colorado, for Juvenile-Appellee

¶ 1     The prosecution appeals from the district court's order dismissing its case against G.S.S. for violating his statutory speedy trial rights.  The prosecution argues that the sixty-day statutory speedy trial period was waived or extended by G.S.S.'s requests for continuances, and that if there was a speedy trial violation, dismissal is not the proper remedy under section 19-2-509(4)(b), C.R.S. 2018.  We reject both contentions and affirm.

## I.  Background

¶ 2     G.S.S. was arrested and charged with two delinquent acts for threatening to shoot students at his middle school.  He was placed in secure detention.

¶ 3     At the initial detention hearing on May 2, 2017, the court ordered that G.S.S. be held without bond, pending psychological and risk-assessment evaluations and the establishment of a release plan.

¶ 4     Numerous hearings were held over the next several months regarding the status of G.S.S.'s release from detention.  Then, on August 9, 2017, G.S.S.'s counsel requested a hearing to "determine and comply with" G.S.S.'s speedy trial rights under section 19-2-509(4)(b).  According to that statute, juveniles are to be brought to

trial within sixty days of the entry of a no-bond order.  Defense counsel then moved to dismiss the case for violation of G.S.S.'s statutory speedy trial rights.

¶ 5     After a hearing, the court granted the motion and dismissed the case against G.S.S. with prejudice.

## II.  Discussion

¶ 6     Our first task in deciding whether G.S.S. waived or otherwise extended his right to a speedy trial is to identify those statutory provisions that define G.S.S.'s statutory speedy trial rights.  We must then construe and apply those statutes, reviewing the district court's interpretation de novo.  *See Mosley v. People*, 2017 CO 20, ¶ 15; *People v. Walker*, 252 P.3d 551, 552 (Colo. App. 2011).

¶ 7     When construing a statute, our primary goal is to ascertain and give effect to the legislative intent.  *See People in Interest of T.A.*, 91 P.3d 473, 474 (Colo. App. 2004).  "In determining legislative intent, a reviewing court should look to the language of the statute, giving effect to words and phrases according to their plain and ordinary meaning."  *Id.*  If the language is clear and unambiguous, we apply it as written.  *Id.*  If, however, the language is reasonably susceptible to more than one interpretation, it is ambiguous and we

2

may look to intrinsic and extrinsic aids to guide our interpretation. *See In re People in Interest of A.A.*, 2013 CO 65, ¶ 10.

### A. A Juvenile's Statutory Speedy Trial Rights

¶ 8 There are several statutes in the Children's Code that cross-reference one another and are relevant to resolving the issue of whether G.S.S.'s right to a speedy trial was violated. We first describe how these statutes work together.

¶ 9 Section 19-2-108(2)(d), C.R.S. 2018 (the juvenile speedy trial statute), sets forth the timelines within which certain hearings or events in a delinquency case must occur and requires that section 18-1-405, C.R.S. 2018 (the adult speedy trial statute applicable to adults), and Crim. P. 48(b) govern a juvenile's speedy trial rights. Specifically, for an adjudicatory trial, section 19-2-108(2)(d) incorporates the speedy trial period set forth in section 19-2-708(1), C.R.S. 2018, the statute that governs the entry of a plea in a delinquency case. Together these two statutes require that a juvenile be tried within sixty days of the entry of a not guilty plea unless a jury trial has been requested under section 19-2-107,

C.R.S. 2018, or the juvenile has explicitly or implicitly waived or extended the speedy trial period.[1]  But when a juvenile is held in detention due to a no-bond hold order, these generally applicable speedy trial statutes are modified.

¶ 10     Section 19-2-508, C.R.S. 2018, describes how and when the court should determine if a juvenile may be released from or placed in detention.  And, consistent with sections 19-2-108 and -708, discussed above, it requires that any juvenile who is detained without bail must be tried within sixty days unless a jury trial has been requested.  *See* § 19-2-508(3)(a)(IV)(D).  If we looked no further, we might conclude that unless a jury trial has been requested, a juvenile ordered to be held without bond must be tried within sixty days of entering a not guilty plea.  But we cannot ignore section 19-2-509.  *See A.S. v. People*, 2013 CO 63, ¶ 10 ("When construing a statute, we ascertain and give effect to the General Assembly's intent, reading applicable statutory provisions as a whole in order to accord consistent, harmonious, and sensible

[1] G.S.S. never requested a jury trial.  We discuss the prosecution's waiver argument below.

4

effect to all their parts."). In essence, section 19-2-508 reaffirms the sixty-day speedy trial period applicable to all non-jury adjudicatory trials. Section 19-2-509(4)(b) (the juvenile bail statute) then describes that for those juveniles held without bond, the running of the speedy trial clock is triggered by entry of a not guilty plea *or* a no-bond hold order, "whichever date is earlier."

¶ 11 Because section 19-2-508 references the general speedy trial statutes triggered by the entry of a plea of not guilty, and section 19-2-509 specifically addresses how the speedy trial clock is triggered by either a not guilty plea or a no-bond hold order, the statutes seemingly conflict. However, to the extent that the two statutes conflict, we should attempt to harmonize them to effectuate the legislative intent. *See T.A.*, 91 P.3d at 474. And, generally, the more specific statute governs over the more general. § 2-4-205, C.R.S. 2018; *accord Gessler v. Doty*, 2012 COA 4, ¶ 13. Hence, because it is the more specific statute, section 19-2-509 governs over section 19-2-508.

¶ 12 Section 19-2-509 does not otherwise modify provisions of the generally applicable juvenile speedy trial statutes; therefore, the other provisions of those statutes apply. And because section 18-1-

405's provisions are not inconsistent with the juvenile speedy trial statutes, both the tolling and enforcement provisions of the criminal speedy trial statute, including whether the speedy trial period has been tolled or waived, are applicable. *See People in Interest of J.M.N.*, 39 P.3d 1261, 1263 (Colo. App. 2001) (holding that the criminal speedy trial statute and related law apply when considering whether a juvenile's right to speedy trial has been violated); *People in Interest of G.W.R.*, 943 P.2d 466, 467 (Colo. App. 1997). With this background, we now turn to the prosecution's arguments that G.S.S.'s or his counsel's actions extended the speedy trial period beyond sixty days.

¶ 13 The court entered a no-bond hold order at G.S.S.'s initial detention hearing on May 2, 2017. Thus, according to the plain language of the bail statute, G.S.S. was entitled to a trial within sixty days of that date, or July 1, 2017. The court did not hold a trial within that sixty-day limit. In fact, at no point did the court even set a trial date. But is that attributable to actions taken by G.S.S. that extended his speedy trial period? Our answer is "no."

¶ 14 The prosecution makes several arguments regarding why G.S.S. is at fault for his trial not occurring before his speedy trial

period ran. First, it argues that a request for a jury trial was required to trigger the running of G.S.S.'s speedy trial clock. But even when entitled to one, a juvenile is not required to request a jury trial. *See* § 19-2-107 (providing that a juvenile or the district attorney may demand a jury trial under certain circumstances, but failure to demand a jury trial constitutes a waiver of any such right). And a failure to request a jury trial has no bearing on the applicable speedy trial period for a non-jury trial. Further, section 19-2-509, by its explicit terms, does not require that a jury trial be requested.

¶ 15    Second, the prosecution argues that when the tolling provisions of section 18-1-405 are applied, the sixty-day speedy trial period was either extended or waived when G.S.S.'s counsel requested continuances of the various court hearings. But not all defense actions that result in a continuance of a hearing date waive, toll, or extend a speedy trial period. *See Tongish v. Arapahoe Cty. Court*, 775 P.2d 63 (Colo. App. 1989) (holding that only delays that impede the statutory goal of bringing a defendant to trial within the statutory speedy trial period are excludable from computation of the speedy trial deadline; and procedural interruptions, such as a

7

continued pretrial conference, that do not delay a trial beyond the applicable speedy trial period are not automatically excludable without the defendant's express waiver of speedy trial rights). When we consider the circumstances of each hearing at which G.S.S.'s counsel requested a continuance and apply the tolling and waiver provisions of section 18-1-405, we agree with the district court that G.S.S. did nothing to delay the setting or occurrence of a trial within the sixty-day speedy trial period. The failure to timely hold the trial was simply the result of the prosecution's and the court's failure to hear the speedy trial clock ticking.

¶ 16    G.S.S.'s counsel sought his release from detention at the initial detention hearing and every hearing thereafter. Although a release plan had been devised by staff from the pretrial release program, the pretrial staff, the court, and the prosecution were unwilling to implement the plan until a risk assessment and safety evaluation of G.S.S. had been completed. The continuances requested at each hearing between the initial May 2nd detention hearing and July 11, 2017, the date of the first hearing after the sixty-day speedy trial period had run, focused on the delays in the completion of the risk and mental health assessment and

evaluation that would facilitate G.S.S.'s release from detention.  As of that July 11th date when the evaluation was completed, the court had consistently held to its position that until the assessment and evaluation were completed and reviewed, it would not reconsider G.S.S.'s repeated requests for release from detention.[2]

¶ 17    It is true that while waiting for the risk assessment to be completed, the court asked whether plea negotiations were occurring and suggested that the pending evaluation might be helpful in that regard.  G.S.S.'s counsel acknowledged that any assessment or evaluation would likely also assist with plea negotiations.  But counsel was not the driving force behind and did not acquiesce in the delays.  Instead, she continually focused on the

---

[2] The prosecution argues that the risk and safety assessment that the prosecution, pretrial services staff, and the court required in order to consider G.S.S.'s release from detention was effectively a competency evaluation and the delay in receiving it was therefore chargeable to G.S.S. under section 18-1-405(6)(a), C.R.S. 2018.  But none of the language of that statutory subsection applies here. *See id.* (excluding "[a]ny period during which the defendant is incompetent to stand trial, or is unable to appear by reason of illness or physical disability, or is under observation or examination at any time after the issue of the defendant's mental condition, insanity, incompetency, or impaired mental condition is raised").

9

primary goal of obtaining G.S.S.'s release from detention and did not request any delay in setting a trial date or holding a trial. After reviewing the record, the district court acknowledged in its dismissal order that its prior recollection as to why the hearings were continued was in error. It found that the delays were for the purpose of getting an assessment and an evaluation to allow G.S.S. to be released and that there was no reason why the trial could not have been set to occur while the completion of these tasks was pending:

- "It was a little bit different situation than I had originally thought, where your attorney was attempting to help you get released. And [the District Attorney], I'm sure she's accurate when she says it was designed *also* to potentially help you get a more favorable plea agreement. But you didn't do anything to delay your trial." (Emphasis added.)

- "[A]nd similarly, under 18-1-405, I have to find that you delayed or did something else that caused the trial to go beyond the 60 days. I can't make that finding. You didn't do anything to delay your trial."

¶ 18    The prosecution appears to argue that as long as anyone referenced the possibility of a negotiated plea, there was no obligation to set a trial date. But, as in *Tongish*, there was no impediment to engaging in plea negotiations while the trial date was pending. *See* 775 P.2d at 65. The setting of a trial date is not dependent on the parties concluding that resolution of the case without a trial is unlikely. And the dispositional hearings set by the court and the continued detention hearings are precisely the type of "procedural interruptions" that should not be excluded from the speedy trial calculation.

¶ 19    The district court therefore correctly found, with record support, that none of the delay in setting a trial date or holding a trial within the sixty-day speedy trial deadline was attributable to G.S.S. under the provisions of section 18-1-405. The court specifically found that counsel's actions on behalf of G.S.S. were designed to get G.S.S. released, not to delay a trial date. Thus, G.S.S.'s requested continuances of the detention and dispositional hearings did not toll, waive, or extend the speedy trial clock. *See* *Tongish*, 775 P.2d at 65.

¶ 20      Finally, the prosecution argues that defense counsel was likely aware of the speedy trial issue and had an obligation to alert the court and the prosecution to it. We cannot infer from the record before us that counsel was aware of the applicable speedy trial period before it ran. But, even if true, the obligation to bring G.S.S. to trial within the speedy trial period did not fall on counsel for G.S.S. It bears repeating that it is the court's and the prosecutor's duty, not a defendant's, to ensure that the speedy trial provisions are met. *See People v. Rogers*, 706 P.2d 1288, 1290 (Colo. App. 1985); *cf. G.W.R.*, 943 P.2d at 467 (holding no violation of speedy trial rights where defense counsel affirmatively accepted a trial date beyond the speedy trial deadline).

¶ 21      Accordingly, we conclude that by not holding the adjudicatory trial within sixty days of the entry of the no-bond hold order, the court violated G.S.S.'s statutory speedy trial rights.

### B. Remedy for a Violation of a Juvenile's Right to a Speedy Trial Under Section 19-2-509(4)(b)

¶ 22      Having determined that G.S.S.'s speedy trial rights were violated, we must now address whether the remedy is dismissal of the charges or release from detention. We conclude G.S.S. is

entitled to dismissal.  *See, e.g.*, *Watson v. People*, 700 P.2d 544, 549 (Colo. 1985); *People v. Wolfe*, 9 P.3d 1137, 1141 (Colo. App. 1999); *see also* § 18-1-405(1); § 19-2-108.

¶ 23     We have concluded that section 19-2-509, with its sixty-day limit from the date of the no-bond hold or entry of a not guilty plea, whichever is earlier, is the governing statute for the timeframe within which a juvenile must be tried.  But no specific remedy is provided in sections 19-2-508 or 19-2-509.  To resolve the question of the proper remedy for a speedy trial violation in these circumstances, it is necessary to understand the broader policies and procedures related to juvenile detention and delinquency adjudicatory trials.

¶ 24     We outlined in Part II.A above how the juvenile speedy trial and bail statutes relate to one another and to section 18-1-405.  The prosecution now argues that even though it advocated that we should apply all of the waiver and tolling provisions of the criminal speedy trial statute to G.S.S., we should not apply the remedy of dismissal for the violation of his speedy trial rights provided in that same statute because G.S.S.'s speedy trial period was not triggered by his entering a not guilty plea.  Further, it contends, because

section 19-2-509 is entitled "Bail," we should base the remedy for violating the juvenile bail statute on the criminal bail statute rather than the criminal speedy trial statute. G.S.S.'s remedy, it argues, is to have a hearing and have the juvenile court set bail. We see no legal basis for denying the dismissal remedy to G.S.S.

¶ 25    Section 18-1-405(1) provides that,

> [e]xcept as otherwise provided in this section, if a defendant is not brought to trial on the issues raised by the complaint, information, or indictment within six months from the date of the entry of a plea of not guilty, he shall be discharged from custody if he has not been admitted to bail, and, whether in custody or on bail, the pending charges shall be dismissed, and the defendant shall not again be indicted, informed against, or committed for the same offense, or for another offense based upon the same act or series of acts arising out of the same criminal episode.

*Accord* Crim. P. 48(b)(1).

¶ 26    The criminal bail statute, section 16-4-101(4), C.R.S. 2018, provides that

> if a person is denied bail under this section, the trial of the person shall be commenced not more than ninety-one days after the date on which bail is denied. If the trial is not commenced within ninety-one days and the delay is not attributable to the defense, the court shall immediately schedule a bail

14

hearing and shall set the amount of the bail for the person.

¶ 27    Thus, the Code of Criminal Procedure identifies that the specific remedy for violating a criminal defendant's rights to trial when he or she is held without bail is to hold a hearing to determine release, not dismissal of the charges.

¶ 28    However, in the criminal statutes, the legislature has clearly separated the triggers and remedies for speedy trial violations for criminal defendants for whom no bond has been set and for those defendants who have had bond set but who have not been tried within the generally applicable speedy trial period.  The remedy for a speedy trial violation for a criminal defendant whose speedy trial clock is triggered by a not guilty plea is dismissal of the charges.  On the other hand, the remedy for a violation of the shorter no-bond speedy trial period is to hold a hearing and set bail.

¶ 29    In the applicable juvenile statute, the no-bond speedy trial clock for a detained juvenile is triggered by *either* a no-bond order or a not guilty plea.  The legislature could have chosen to model its juvenile speedy trial statutes in the same way as the adult criminal procedure statutes, but it did not.

¶ 30    And, other than the various related juvenile speedy trial statutes incorporating the provisions of section 18-1-405, the juvenile bail statute is silent as to the remedy for violating the associated rights. Where a statute is silent as to remedy, the statute may be considered ambiguous on that point. *See People v. Mosley*, 397 P.3d 1122, 1126 (Colo. App. 2011) ("A statute may be ambiguous if it is silent on an issue that would be expected to be within its scope." (quoting *People v. Carey*, 198 P.3d 1223, 1229 (Colo. App. 2008))), *aff'd*, 2017 CO 20. At that point, we may look to extrinsic sources to determine the legislature's intent as to the appropriate remedy.

¶ 31    To discern the legislative intent related to section 19-2-509(4)(b), we must honor the legislature's purpose in structuring a juvenile delinquency system that is different from the criminal system. *See A.C. v. People*, 16 P.3d 240, 241 (Colo. 2001). It is clear that "a delinquency proceeding is not a criminal prosecution," *S.G.W. v. People*, 752 P.2d 86, 88 (Colo. 1988), and simply using criminal statutes as proxies for like provisions in the Children's Code does not honor the differences intended between the juvenile delinquency and criminal systems.

16

¶ 32    The Children's Code's primary goal is to serve the best interests of the child and of society.  § 19-1-102(1)(a), C.R.S. 2018. "In service of these goals, the Children's Code seeks to provide informal, simple and speedy judicial procedures."  *A.C.,* 16 P.3d at 242; *see People in Interest of T.M.,* 742 P.2d 905, 907 (Colo. 1987) ("[T]he underlying theme of a delinquency proceeding is to provide guidance and rehabilitation for the child and protection for society rather than fixing criminal responsibility, guilt, and punishment."). Our supreme court has also noted that, because of the unique psychological positioning and sensitivity of juveniles, as compared to adult offenders, we must be particularly cognizant of the harm caused to children by delays in bringing a juvenile to trial and prolonged detention.  *See P.V. v. Dist. Court,* 199 Colo. 357, 360-61, 609 P.2d 110, 112 (1980).

¶ 33    With these purposes in mind, we cannot harmonize and give effect to the applicable juvenile speedy trial statutory provisions by failing to apply the remedy provided by specifically incorporating the provisions of the adult criminal speedy trial statute — dismissal under section 18-1-405.  We are not at liberty to choose to incorporate a statute that we think is a better fit.  We discern no

17

legislative intent to limit application of the dismissal remedy for violating a juvenile's no-bond speedy trial rights to only those juveniles who have entered a not guilty plea.

¶ 34     Further, any ambiguity in the juvenile bail statute must be construed in G.S.S.'s favor and in furtherance of the rehabilitative purposes of the Children's Code. *See Frazier v. People*, 90 P.3d 807, 811 (Colo. 2004) ("[T]he rule of lenity . . . requires courts to resolve ambiguities in a penal code in favor of a defendant's liberty interests."); *People in Interest of D.S.L.*, 134 P.3d 522, 527 (Colo. App. 2006) ("[I]t is particularly appropriate to apply the rule of lenity in resolving statutory ambiguities in juvenile delinquency proceedings . . . .").

¶ 35     For these reasons and consistent with the Children's Code's purpose — to promote rehabilitation and minimize delay and prolonged detention — we discern the legislative intent to require dismissal when a violation of speedy trial occurs, regardless of whether the speedy trial period has been established by a no-bond hold order *or* entry of a not guilty plea. Therefore, we conclude that the district court did not err by dismissing G.S.S.'s case based on the violation of his speedy trial rights.

## III. Conclusion

¶ 36    The order is affirmed.

JUDGE HARRIS concurs.

JUDGE J. JONES dissents.

JUDGE J. JONES, dissenting.

¶ 37    The majority's decision to affirm the district court's dismissal of the charges against G.S.S. rests on two conclusions. First, the majority concludes that the delays caused by defense counsel's multiple requests for continuances to allow time for a mental health evaluation of G.S.S. aren't chargeable to G.S.S. because defense counsel was only trying to obtain G.S.S.'s release from detention. Second, the majority concludes that the remedy for a failure to try a juvenile held without bond within sixty days of a no bond order, as required by section 19-2-509(4)(b), C.R.S. 2018, is dismissal of the charges under section 18-1-405(1), C.R.S. 2018. For reasons I'll get to later, I'm not altogether sold on the majority's second conclusion. But the bigger problem for me is that the majority's first conclusion is belied by the record and contrary to Colorado Supreme Court precedent. The record clearly shows, and the district court expressly found, that while defense counsel was attempting to obtain G.S.S.'s release from detention, counsel was also seeking to improve G.S.S.'s plea bargaining position. The supreme court has held that delays resulting from defense counsel's efforts to facilitate

a plea bargain are chargeable to the defendant. And so I respectfully dissent.

## I. The Delays are Chargeable to G.S.S.

¶ 38 Section 19-2-509(4)(b) provides that a juvenile who remains in custody or detention without bail

> must be tried on the charges on which the bail
> is denied . . . within sixty days after the entry
> of such order [denying bond] or within sixty
> days after the juvenile's entry of a plea,
> whichever date is earlier; except that, if the
> juvenile requests a jury trial pursuant to
> section 19-2-107, the provisions of section
> 19-2-107(4) shall apply.

But the statute is silent on whether certain events may toll the sixty-day period.[3] The majority assumes, as I do, that delays attributable to the defense do so. This is so because it's inconceivable that the General Assembly intended to reward — indeed, create a windfall for — a defendant who causes delay. *Cf.* § 18-1-405(6)(f) ("[t]he period of any delay caused at the instance of the defendant" doesn't count toward section 18-1-405(1)'s six-month speedy trial period).

_____

[3] G.S.S. has the burden of showing a violation of this provision. *See Saiz v. Dist. Court,* 189 Colo. 555, 557, 542 P.2d 1293, 1295 (1975).

21

¶ 39    Of course, this statement begs the question: What sort of conduct is attributable to a defendant for this purpose?  The supreme court has answered that question; broadly stated, "[i]f the delay is caused by, agreed to, or created at the instance of the defendant, it will be excluded from the speedy-trial calculation made by the court."  *People v. Bell*, 669 P.2d 1381, 1384 (Colo. 1983); *accord Jones v. People*, 711 P.2d 1270, 1281 (Colo. 1986); *Saiz v. Dist. Court*, 189 Colo. 555, 558, 542 P.2d 1293, 1295 (1975).  Put another way, any delay "at the request of or for the benefit of the defendant . . . is properly chargeable to the defendant."  *People v. Luevano*, 670 P.2d 1, 3 (Colo. 1983) (quoting *People v. Murphy*, 183 Colo. 106, 109, 515 P.2d 107, 109 (1973)).

¶ 40    It's undisputed that every delay in this case was caused by numerous continuances requested by defense counsel.  So it would seem that those delays are chargeable to G.S.S. under section 19-2-509(4)(b), given the supreme court pronouncements just noted.  But the majority reasons, relying on *Tongish v. Arapahoe County Court*, 775 P.2d 63 (Colo. App. 1989), that only continuances affecting the trial date count, and that the continuances requested by G.S.S.'s

22

attorney concerned only counsel's efforts to get G.S.S. released from detention.

¶ 41     This is where I part ways with the majority.  For even were I to accept the premise of *Tongish*, I don't accept the majority's limited characterization of the purpose of the delays requested by G.S.S.'s counsel.  Nor did the district court.  And my understanding of counsel's reasons, and the district court's understanding as reflected in the record, brings into play supreme court authority requiring that we charge the delays to G.S.S. for purposes of section 19-2-509(4)(b).

¶ 42     Defense counsel sought (and paid for) a mental health evaluation for G.S.S. by a licensed professional.  After trying unsuccessfully to arrange evaluations by two professionals (for which counsel sought additional delay), defense counsel retained such a professional, but couldn't arrange an examination right away due to that person's schedule.  As a result of these efforts, defense counsel requested a short extension of the detention hearing, *see* § 19-2-508(2)(a), C.R.S. 2018, and several extensions of subsequent dispositional hearings (that is, hearings to determine

whether there was probable cause for the charges, § 19-2-705, C.R.S. 2018).

¶ 43    The majority correctly points out that one of defense counsel's goals in obtaining such an evaluation may well have been to assist in getting G.S.S. released from detention.  But that wasn't the only goal.  Another goal, expressed repeatedly by defense counsel, was to assist counsel with plea negotiations.  Counsel hoped to obtain an opinion that G.S.S. wasn't a danger to the community so as to improve G.S.S.'s plea bargaining position.

¶ 44    Plea bargaining considerations, and all parties' awareness that they couldn't move forward with such discussions, or with a plea, until defense counsel was able to digest the mental health professional's evaluation, were discussed at several hearings both before and after the sixty-day period would otherwise have expired. Both the prosecutor and the defense counsel expressly contemplated reaching a plea agreement following receipt of the defense-retained professional's report.  And the court monitored the progress of those efforts toward a disposition, recognizing even that the evaluation would affect G.S.S.'s entry of a plea and any progress toward a trial.  In ruling on G.S.S.'s motion to dismiss, the district

court found that the mental health evaluation "was designed also to potentially help [G.S.S.] get a more favorable plea agreement."

¶ 45    These facts, in my view, distinguish this case from *Tongish*, in which the only continuances were of a pretrial conference. 775 P.2d at 65. The record shows that the continuances in this case were for the purposes of buttressing G.S.S.'s case for release from detention, promoting and advancing plea negotiations, enabling G.S.S. to enter a more informed plea to the charges, and, inferentially, preparing the defense's case.

¶ 46    In closely analogous circumstances, the supreme court has held that delays for such purposes are attributable to the defense. In *Maynes v. People*, 178 Colo. 88, 495 P.2d 551 (1972), the court held:

> The delay which preceded trial was occasioned, to a large extent, by the defendant. The defendant requested and obtained numerous continuances in an attempt to effectuate a plea bargain. The prosecution is not chargeable with delay that has been caused by the defendant.

*Id.* at 91, 495 P.2d at 552; *see also People v. Howard*, 541 P.2d 1252, 1254 (Colo. App. 1975) (not published pursuant to C.A.R. 35(f)). Similarly, the supreme court has held that delays

25

attributable to a defendant's efforts to meet conditions to qualify for a deferred judgment are chargeable to the defendant. *Luevano*, 670 P.2d at 3; *see also Alley v. Kal*, 44 Colo. App. 561, 562-63, 616 P.2d 191, 192 (1980) (also so holding; the delay was "for the purposes of achieving a disposition of [the defendant's] case without going to trial"). And in *Jones*, 711 P.2d 1270, the supreme court held that delays occasioned by defense counsel's request that the defendant undergo a competency evaluation were chargeable to the defense because they were "for the benefit of the defendant." *Id.* at 1280-81.

¶ 47    All of the continuances requested by defense counsel in this case were for G.S.S.'s benefit. And all of them were for the obvious purpose of avoiding a trial on the charges. So it follows that the resulting delays are chargeable to G.S.S., and therefore the district court erred in deciding to the contrary.[4]

---

[4] In the district court's defense, though the prosecutor argued that the delays were attributable to the defense because defense counsel was trying to improve G.S.S.'s plea bargaining position, the prosecutor didn't provide the court with the legal authority I've cited above.

II.    The Proper Remedy for a Violation of Section 19-2-509(4)(b)

¶ 48    The majority holds that dismissal is the only remedy available when a court fails to try the case within sixty days of a no-bond order.  In so holding, the majority applies section 18-1-405(1) to section 19-2-509(4)(b).  It's not clear to me, however, that section 18-1-405(1) applies to this juvenile statute.

¶ 49    The case on which the majority relies, *People in Interest of J.M.N.*, 39 P.3d 1261 (Colo. App. 2001), concerned speedy trial provisions of sections 19-2-108(1) and -708(1), C.R.S. 2018.  The division held that the juvenile was required to make a speedy trial objection before the adjudicatory trial, reasoning that section 19-2-108(1) expressly incorporates a sixty-day deadline from section 19-2-708(1) and also says that "[t]he juvenile's right to a speedy trial shall be governed by section 18-1-405."  39 P.3d at 1263.

¶ 50    But this case doesn't involve sections 19-2-108 and -708.  Rather, it involves section 19-2-509, which doesn't include any reference to section 18-1-405.  Further, section 19-2-509 is a "bail" statute.  The most closely analogous statute in the Code of Criminal Procedure is section 16-4-101, C.R.S. 2018.  Subsection (4) of that

statute says that if a defendant is denied bail, "the trial of the person shall be commenced not more than ninety-one days after the date on which bail is denied." So that bail statute essentially tracks the language of the juvenile bail statute, section 19-2-509(4)(b), substituting ninety-one days for sixty days. But it doesn't provide for dismissal of charges; rather, it says that "[i]f the trial is not commenced within ninety-one days and the delay is not attributable to the defense, the court shall immediately schedule a bail hearing and shall set the amount of the bail for the person." § 16-4-101(4).

¶ 51     The upshot is that in directly analogous circumstances, the General Assembly has told us that the remedy is to hold a hearing and set bail, not to dismiss the charges. The majority, however, reasons that the general purposes of the juvenile system — particularly the need for swift adjudication — justify the harsher result of dismissal under section 18-1-405. Maybe. But maybe not. Perhaps those purposes are adequately accounted for by the shorter time periods set forth in the juvenile statutes.

¶ 52     In any event, I see an ambiguity in section 19-2-509(4)(b) that calls for legislative fixing. If the General Assembly decides to take a look at that ambiguity, it may also wish to consider whether the

drastic remedy of dismissal is appropriate for all speedy trial violations even when such violations don't amount to violations of the constitutional right to a speedy trial.

### III.   Conclusion

¶ 53    I would reverse the district court's dismissal of the charges against G.S.S. and remand for further proceedings on those charges.